**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| PEDRO COVARRUBIAS ROJAS, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY ADMINISTRATION, ) <br> ) <br> Defendant. ) <br> _____ ) | No. ED CV 10-303-PLA <br><br><br> **MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 10, 2010, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 25, 2010, and March 31, 2010. Pursuant to the Court's order, the parties filed a Joint Stipulation on December 6, 2010, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 10, 1960. [Administrative Record ("AR") at 18, 60.] He has a high school education, is able to communicate in English, and has past work experience as a grounds keeper and as a combination warehouse worker/forklift operator. [AR at 17-18, 31, 54, 157-59.]

Plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income payments on March 12, 2007 [AR at 123-26, 153-64], alleging that he had been unable to work since November 24, 2006[1], due to pain in his back, neck, right arm, right hand, and upper legs caused, in part, by a work-related injury he sustained on June 2, 2006. [AR at 28, 30-33, 158.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 64-68, 70-75.] A hearing was held on June 29, 2009, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 24-59.] A medical expert and a vocational expert also testified. [AR at 39-45, 53-58.] On December 8, 2009, the ALJ issued an unfavorable decision. [AR at 8-19.] On January 28, 2010, the Appeals Council denied plaintiff's request for review of the hearing decision. [AR at 1-3.] Plaintiff then filed this action.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Plaintiff initially alleged that his disability onset date was June 2, 2006, the day of his work-related injury. [AR at 123, 153.] At the administrative hearing, however, plaintiff amended his alleged onset date to November 24, 2006, the day after he stopped working. [AR at 30.]

2

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made, and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed, and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" ("RFC")[2] to perform his past work. If the claimant has an RFC sufficient to perform his past work, the claimant is not disabled, and the claim is denied. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since November 24, 2006, the alleged onset date of disability.[3] [AR at 13.] At step two, the ALJ concluded that plaintiff has the following severe impairments: "lumbar degenerative disk disease, cervical disk disease, carpal tunnel syndrome, bilaterally." [AR at 13.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 15.] The ALJ further found that plaintiff retained the RFC to perform light work,[4]

---

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]  The ALJ also found plaintiff insured for Disability Insurance Benefits purposes through December 31, 2007. [AR at 13.]

[4]  Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg
(continued...)

4

with the following limtitations: plaintiff "can occasionally climb stairs and ramps but should not climb ladders, ropes, or scaffolds. He can occasionally[] kneel, crouch, stoop, bend and crawl. He should not be exposed to unprotected heights. He can perform frequent, but not constant, fine and gross manipulation. He cannot perform forceful grasping or torquing bilaterally. He can perform frequent, but not constant, turning of the neck or torso. He can perform occasional bilateral reaching at, or above, the shoulder level and frequent, but not constant, reaching in front." [AR at 15.] At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 17.] At step five, the ALJ determined that plaintiff can perform jobs that exist in significant numbers in the national economy, specifically as a sewing machine operator, furniture rental consultant, and non-governmental mail clerk. [AR at 18.] Accordingly, the ALJ found plaintiff not disabled. [AR at 19.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider plaintiff's subjective complaints and assess plaintiff's credibility. [See Joint Stipulation ("JS") at 3-10.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

At the hearing, plaintiff testified that, beginning some time after a work-related accident, he could not "function" at his last job due to pain in his back and that, over the two-and-one-half years from his disability onset date to his hearing date, the pain in his back has increased. [AR at 28, 30, 34.] Plaintiff further testified that he experiences pain in his neck, right arm, and hand that precludes him from working [AR at 31, 37-38], and he experiences pain in the back of his upper legs and in his shoulders. [AR at 32, 50.] Plaintiff has received two injections in his lower back, which alleviated his pain for ten hours at most. [AR at 46.] At the time of the hearing, plaintiff was taking four medications to control his pain and inflammation, including Hydrocodone and Soma.

---

[4](...continued)
controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[AR at 46.] Plaintiff indicated that his pain varies depending on his level of activity and that after fifteen to twenty minutes of "activity outside" he has to lie down. [AR at 48.] He lies down approximately six out of eight hours of the day. [AR at 49.] Plaintiff explained that prolonged standing causes his back to stiffen and his legs to hurt and that prolonged sitting causes pain to his back and buttocks area. [AR at 36.] He can stand in one position for half an hour at most and can sit for half an hour at most. [AR at 37.] Plaintiff alleged that he can lift no more than forty pounds without hurting himself, but that it would be impossible for him to lift that amount of weight "off and on throughout the day." [AR at 37.] Plaintiff cannot grip things, make a fist, or button clothes with his right hand. [AR at 49-51.] According to plaintiff, his doctors recommended surgery for his back and nerves, but Worker's Compensation has refused to cover the surgery. [AR at 37.]

When the record contains medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying Bunnell to subjective physical complaints). Under such circumstances, an ALJ can reject a plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The following factors may be considered in weighing a plaintiff's credibility: (1) his "reputation for truthfulness;" (2) "inconsistencies either in [his] testimony or between [his] testimony and [his] conduct;" (3) his "daily activities;" (4) his "work record;" and (5) "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [plaintiff] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (quoting Light, 119 F.3d at 792); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834). The ALJ must state which

testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Here, because the record contains no evidence of malingering by plaintiff,[5] the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, despite finding that plaintiff's medical condition could reasonably be expected to cause the alleged symptoms, the ALJ found plaintiff's statements "concerning the intensity, persistence and limiting effects" of his symptoms to be "not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." [AR at 16.] The ALJ discounted plaintiff's subjective complaints for thirteen reasons.[6] [AR at 16, 17.] As discussed below, the Court has considered the ALJ's reasons for finding plaintiff not credible and concludes that they are neither clear nor convincing.

---

[5] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest that plaintiff was doing so.

[6] The ALJ listed thirteen reasons for finding plaintiff not credible: (1) plaintiff does not take pain medication associated with severe disabling pain; (2) the medical expert testified that the objective test results do not support back surgery; (3) the medical expert testified that plaintiff's carpal tunnel syndrome is mild on the right and early and mild on the left, and the medical expert did not state that surgery was indicated; (4) plaintiff does not allege that he requires surgery for his carpal tunnel syndrome; (5) plaintiff's electrodiagnostic testing in February 2007 did not substantiate any radiculopathy in the upper or lower extremities; (6) plaintiff's February 23, 2007, cervical MRI did not show nerve root impingement or cord involvement; (7) although plaintiff's March 16, 2008, MRI may have shown worsening, the medical expert testified that surgery is not clearly a remedy; (8) the examining physician stated that plaintiff should only avoid repetitive lifting of more than 30-35 pounds and repetitive flexion, extension and rotation of the head and neck, and he recommended conservative therapy, but he did not find plaintiff disabled from all work or a surgical candidate; (9) plaintiff lives with his mother, is able to help with the dishes and cooking, drives, and takes his mother to her doctors' appointments; (10) plaintiff has not been for mental health treatment in over two years due to transportation problems, but he drives his mother to her doctors' appointments; (11) plaintiff testified that he can lift 40 pounds, stand for 30 minutes at a time, and sit for 30 minutes at a time; (12) plaintiff completed his mental health treatment on June 15, 2007, and was found to have developed adequate coping strategies for his adjustment disorder; and (13) plaintiff was capable of attending the administrative hearing and participating in his own behalf. [AR at 16, 17.]

7

As a preliminary matter, plaintiff asserts that the ALJ's credibility determination is insufficiently specific, since the ALJ neglected to identify which of plaintiff's allegations of disabling limitations he found not credible. [JS at 9.] The undersigned agrees. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible."), cited with approval in Lester, 81 F.3d at 834. By generically concluding that plaintiff's "allegations of disabling limitations are not credible to the extent alleged" [AR at 16], the ALJ failed to specify, as is required, which part(s) of plaintiff's testimony he found not credible. Moreover, the ALJ's reasons for finding plaintiff's testimony not credible do not withstand scrutiny. First, the ALJ's first reason -- that plaintiff does not take pain medication associated with severe disabling pain -- reflects a misreading or an improper selective consideration of the evidence. Plaintiff testified that he in fact takes a number of medications for pain, including Hydrocodone, Soma, and a medication similar to ibuprofen. [AR at 46.] The medical record indicates that plaintiff has taken additional pain medications: Tramadol [AR at 187, 204], Motrin [AR at 204], Naproxen [AR at 187], and Vicodin. [AR at 162.] See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (finding error in an ALJ's "selective[] focus[] on . . . [evidence] which tend[s] to suggest non-disability"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (stating that it is error for an ALJ to ignore or misstate competent evidence in order to justify his conclusion).

Second, the ALJ misconstrued the medical expert's testimony concerning whether plaintiff requires back surgery. In reasons two and seven for finding plaintiff not credible, the ALJ found that medical expert Dr. Joseph Jensen testified that the objective test results do not indicate that plaintiff needs back surgery and that, despite a recent MRI that may show worsening of plaintiff's back condition, surgery is not clearly a remedy.[7] [AR at 16.] Dr. Jensen said no such thing. Rather, when the ALJ directly asked Dr. Jensen if plaintiff should obtain back surgery, he replied, "I can't tell," as plaintiff had not had a "good physical examination" [AR at 41-42], and he was

---

[7] The ALJ referred to plaintiff's MRI, the results of which are recorded in Exhibit 18F, as having been performed on March 16, 2008. [AR at 16.] It appears that the subject MRI was actually performed on March 12, 2009. [AR at 579-81.]

"hesitant to make an opinion just on the basis of" plaintiff's MRI or imaging studies. [AR at 39, 42.] The ALJ's reliance on Dr. Jensen's testimony -- which he misconstrued -- to support his rejection of plaintiff's credibility is erroneous. See Tonapetyan v. Halter, 242 F.3d 1144, 1151 (9th Cir. 2001) (stating that it is error for an ALJ to rely on a medical expert's diagnosis while ignoring the expert's "equivocations and his concern over the lack of a complete record upon which to assess" plaintiff's impairment); see also Gallant, 753 F.2d at 1456.

Furthermore, the ALJ stated in his eighth reason for finding plaintiff not credible that examining physician Dr. Chester A. Hasday did not find plaintiff a surgical candidate for his back condition. In his third and fourth reasons, the ALJ stated that Dr. Jensen testified that plaintiff's carpal tunnel syndrome ("CTS") is mild, that Dr. Jensen did not recommend surgery for plaintiff's CTS, and that plaintiff did not allege that he requires surgery to treat his CTS. However, being considered a candidate for surgery is not a prerequisite for the receipt of benefits. While failure to follow prescribed treatment that would ameliorate an impairment, without good reason, is a valid basis for denying benefits (20 C.F.R. §§ 404.1530(b), 416.930(b)), surgery was not prescribed as treatment that could ameliorate plaintiff's back condition or CTS. Therefore, the mere fact that plaintiff did not undergo surgery does not undermine his credibility. See also Aguirre v. Astrue, 2009 WL 3346741, at *5 (C.D. Cal. Oct. 14, 2009) (reversing the ALJ's denial of benefits on the basis that the plaintiff declined surgery when in fact she was not prescribed surgery or cleared for surgery). To the extent the ALJ concluded that Dr. Hasday's determination that plaintiff does not need back surgery undermines plaintiff's credibility, it is not readily apparent to the Court how Dr. Hasday's opinion undermines *plaintiff's* credibility, since doctors can disagree about which treatment to prescribe.[8] See Benton, 331 F.3d at 1040 (stating that the ALJ must give clear and convincing reasons for finding plaintiff not credible).

Third, the ALJ improperly relied upon a lack of objective medical evidence substantiating plaintiff's testimony as a basis for discrediting that testimony. In reasons five and six for finding

---

[8] Indeed, the record indicates that plaintiff requested surgical intervention for his back condition and that Dr. Edwin Haronian was assessing the need for surgery. [AR at 540, 610.]

plaintiff not credible, the ALJ cited, among other things, that plaintiff's February 2007 electrodiagnostic test results did not show radiculopathy in the upper or lower extremities. [AR at 16.] Because the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms [AR at 16], objective medical evidence is not required to support the symptoms' alleged severity. Bunnell, 947 F.2d at 345 ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). Therefore, a lack of objective medical evidence corroborating the extent of plaintiff's symptoms was an insufficient reason by itself for the ALJ to find plaintiff not credible. Furthermore, while plaintiff need not present objective medical evidence supporting his complaints, evidence in the record indicates -- contrary to the ALJ's conclusion -- that plaintiff did, in fact, suffer from radiculopathy in 2007. In April, May, and June 2007, treating physician Dr. Eduardo Anguizola diagnosed plaintiff with "[l]umbar radiculopathy, bilaterally," and, in August and September 2007, treating physician Dr. Edwin Haronian diagnosed plaintiff with lumbar radiculopathy. [AR at 605-08.] By ignoring this evidence, the ALJ performed an improper selective analysis of the record. See Edlund, 253 F.3d at 1159. Moreover, according to plaintiff's more recent objective medical tests and Dr. Jensen's testimony, plaintiff's lumbar disc problems have since worsened over time. [AR at 41, 579-81.]

Fourth, examining physician Dr. Hasday's opinion that plaintiff is not disabled from all work, upon which the ALJ relied in his eighth reason for finding plaintiff not credible, does not clearly undermine plaintiff's allegations of disabling impairments. [AR at 16-17, 614.] While an ALJ may rely upon a physician's opinion concerning whether a plaintiff can work when evaluating the plaintiff's credibility (Moncada, 60 F.3d at 524), in this case, the ALJ improperly relied on Dr. Hasday's opinion and ignored those opinions in the record that indicate that plaintiff may be disabled. Treating physicians Dr. Haronian and Dr. Justin Long stated that plaintiff could not work [AR at 530, 609-10]; the ALJ disregarded these opinions. Furthermore, the ALJ, without explanation, gave no weight to Dr. Jensen's opinion that plaintiff's March 16, 2009, MRI may show worsening of plaintiff's back condition, an opinion that conflicts with Dr. Hasday's finding that

plaintiff reached permanent and stationary status orthopedically as of August 31, 2007. [AR at 16, 41.] The ALJ improperly assessed the record by selecting only those parts of Dr. Hasday's report that support the ALJ's conclusion that plaintiff is not disabled. See Edlund, 253 F.3d at 1159.

Fifth, the ALJ's ninth, eleventh, and twelfth reasons for finding plaintiff not credible, which are based on plaintiff's daily activities and mental health, are not sufficiently specific to show how plaintiff's daily activities and mental health undermine plaintiff's credibility, nor are they necessarily inconsistent with plaintiff's alleged impairments. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (explaining that to properly reject a plaintiff's alleged impairments, the ALJ must provide reasoning that is "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony") (quoting Bunnell, 947 F.2d at 345-46). The ALJ noted in his twelfth reason for finding plaintiff not credible that plaintiff completed his mental health treatment on June 15, 2007, and was found to have developed adequate coping strategies for his adjustment disorder. [AR at 17.] However, the ALJ provided no explanation as to how plaintiff's completion of his mental health treatment or development of coping strategies for his adjustment disorder undermines plaintiff's credibility regarding his pain testimony. Therefore, the ALJ's reliance upon plaintiff's mental health as a reason for finding plaintiff not credible was insufficiently specific for this Court to conclude that the ALJ did not arbitrarily discredit plaintiff's testimony.

Furthermore, while an ALJ may reject a plaintiff's credibility if the plaintiff "is able to spend a substantial part of [his] day performing household chores or other activities that are transferable to a work setting" (Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996)), the ALJ did not show that plaintiff's daily activities, which include helping his mother with dishes and cooking, are, in fact, transferable to a work setting. [AR at 48.] See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citing Gallant, 753 F.2d at 1453 (awarding benefits for constant leg and back pain despite plaintiff's ability to wash dishes and cook meals)). Neither is it apparent that plaintiff is able to engage in those activities for a substantial part of his day. Fair, 885 F.2d at 603 (stating that a specific finding that plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting . . . may be sufficient to discredit an allegation of disabling excess pain") (emphasis in original). Since the

Ninth Circuit has held that washing dishes and cooking are not necessarily transferable to the work setting and since the ALJ did not make a specific finding that plaintiff can perform those activities for a substantial part of his day, the ALJ failed to show that plaintiff's daily activities undermine his credibility.

Sixth, because the ALJ did not make any effort to clarify an apparent inconsistency in plaintiff's testimony regarding plaintiff's access to transportation or his ability to drive, the ALJ improperly relied upon this inconsistency in his tenth reason for finding plaintiff not credible. See Social Security Ruling ("SSR") 96-7p[9] (stating that an ALJ "must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements"). Plaintiff testified that, beginning two years prior to the hearing, he stopped seeing his psychiatrist because he no longer had a car. [AR at 47.] The ALJ asked plaintiff if he drives his mother, and plaintiff answered that he drives her to her doctors' appointments. [AR at 48.] The ALJ cited this apparent inconsistency in plaintiff's testimony regarding his ability to drive his mother to her doctors' appointments and his inability to drive himself to his own psychiatrist's appointments as a reason for discrediting plaintiff's allegations concerning the severity of pain caused by his back condition. [AR at 17.] The ALJ did not, however, ask plaintiff to explain, nor did he make any effort to reconcile, this apparent inconsistency in plaintiff's testimony. Indeed, in the Joint Stipulation, plaintiff reconciled this apparent inconsistency, explaining that he is capable of driving on short trips such as those required to take his mother to her doctors' appointments, but that he is incapable of driving fifty miles to his psychiatrist's office. [JS at 6.] Since the ALJ failed to make any reasonable effort to obtain information that could have shed light upon the credibility of plaintiff's statements regarding his access to transportation or his ability to drive, the ALJ's reliance upon this apparent contradiction was error.

---

[9] SSRs do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

Seventh, the ALJ's thirteenth and final reason for finding plaintiff not credible -- that plaintiff attended and participated in his own behalf at the hearing -- does not withstand scrutiny. The ALJ's reasoning is akin to the so-called "sit and squirm" test, in which an ALJ evaluates a plaintiff's credibility based on his or her demeanor at a hearing. The Ninth Circuit has disapproved of the "sit and squirm" test because "[t]he fact that a claimant does not exhibit physical manifestations of [symptoms] at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations . . . are not credible." Gallant, 753 F.2d at 1455; Irwin v. Shalala, 840 F.Supp. 751, 763 (D. Or. 1993) (noting the Ninth Circuit's disapproval of the "sit and squirm" test). It stands to reason that the ALJ committed error by discrediting plaintiff merely due to his attendance at and participation in his own hearing. Furthermore, according to the Social Security Administration's letter to plaintiff informing him of his right to a hearing, "The hearing is your chance to tell the ALJ why you disagree with the decision in your case. You can give the ALJ new evidence and bring people to testify for you. . . . You can question these people at your hearing." [AR at 73.] Plaintiff was informed that he had a right to attend and participate in his own hearing. It was error for the ALJ to discredit plaintiff for exercising that very right.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to reassess plaintiff's subjective symptoms and credibility. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

/

/

/

/

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 27, 2011

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE